United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAM CHILES,

Plaintiff,

v.

THE PERMANENTE MEDICAL GROUP,

Defendant.

Case No. 12-cv-05796-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 44

**INTRODUCTION**

Pending before the Court is Defendant The Permanente Medical Group's ("Defendant" or "TPMG") Second Motion for Summary Judgment, or in the alternative, Adjudication on Each Cause of Action and Summary Adjudication on the Age Discrimination Claims. Dkt. No. 44. Plaintiff Sam Chiles ("Plaintiff") has filed an Opposition (Dkt. No. 46), and Defendant has filed a Reply (Dkt. No. 49). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS Defendant's motion for the reasons set forth below.

**BACKGROUND**

**A. Factual Background**[1]

Plaintiff Sam Chiles was employed by TPMG as a Radiologic Technologist II in July 2007. JSUF No. 1. Initially, Plaintiff worked at the Kaiser facility in Vallejo, but soon after he started his job, he began periodically applying for transfers to different positions within the Vallejo facility and to positions at other facilities. *Id.*, No. 2.

In March 2009, Plaintiff bid for a transfer to a part-time MRI Technologist position at the

[1] Except where noted, the following facts taken from the parties' Joint Statement of Undisputed Facts ("JSUF") (Dkt. Nos. 44-2) are undisputed.

Kaiser facility in Santa Rosa. *Id.*, No. 3. The Santa Rosa facility is in the Hospital located at 401 Bicentennial Way, Santa Rosa. Def. Sep. Stmt. Undisp. Facts ("Def. SSUF"), No. 7, Dkt. No. 44-3. The schedule and hours for the position were specified on the job posting as 32 hours per week: Monday, Thursday, and Friday 10:30 a.m. to 7:00 p.m., and Saturday 9:00 a.m. to 5:30 p.m. JSUF, No. 8. The Santa Rosa position was advertised as a union position, represented by SEIU United Healthcare Workers, and as such, the terms and conditions of employment were governed by the Collective Bargaining Agreement ("CBA"). *Id.*, Nos. 4-5, 29.

Plaintiff was interviewed for the position by Randy Reed, Deana Vestnys, and Frezghi Mengistab, and started working at the facility shortly thereafter. *Id.*, Nos. 9-10. Plaintiff is an African American male who was in his late thirties at the time he began working as an MRI Technologist position at the Santa Rosa facility. Def. SSUF No. 38; Second Amended Complaint ("SAC") ¶ 4. Three other MRI Technologists worked at the Santa Rosa facility, including Mengistab, Keith Diehl , and Michelle Torrez, and had greater union seniority compared to Plaintiff. JSUF, Nos. 11-12. Mengistab is from Eritrea and is of African descent[2]; Diehl and Torrez are Caucasian. *Id.*, No. 11. All were in their early to late 40's. Chiles Depo. at 172:16-21. Plaintiff, who turned 40 during his employment at the hospital, was the youngest tech in the MRI Department. Def. SSUF, No. 38; SAC ¶ 12.

In addition to the Santa Rosa hospital unit, MRI Technologists also worked at an outpatient facility approximately one mile from the hospital, known as "MOB 5," which operated during the hours from 7:30 a.m. to 4:00 p.m. Pl. Sep. Stmt. Undisp. Facts ("Pl. SSUF"), No. 13, Dkt. No. 48; JSUF, No. 14. The MOB 5 facility handled outpatient medical imaging tests, whereas the Radiologic Technologists at the hospital performed imagining studies on patients. JSUF, No. 45. The hospital also had an early shift, from 6:00 a.m. to 2:30 p.m. Ex. B to Morgan Decl. ("Chiles Depo.") at 58:21-23.

[2] Defendant requests that the Court take judicial notice of the fact that the country of Eritrea is located in the horn of Africa. Req. Jud. Not., Ex. F to Mot., Dkt. No. 44. As the geographical location of Eritrea may be accurately and readily determined from sources whose accuracy cannot be disputed, the Court GRANTS Defendant's motion, and takes notice of this undisputed fact pursuant to Fed. R. Evid. 201(b)(2).

The parties disagree on whether staffing for MOB 5 was governed by the CBA. Like the bidding process and job transfers, Defendant asserts that positions at MOB 5 are awarded based on seniority under the process governed by the CBA, and that only one MRI technologist was scheduled to work at MOB 5 at a time. Def. SSUF, Nos. 16-17. If all senior technicians working at MOB 5 called in sick and could not come in, work would be rescheduled or moved to the hospital. *Id.*, No. 47. Plaintiff was not hired to work at MOB 5 because the hours for his job position were specific to the main hospital, and covered evenings and weekends, when MOB 5 was not open. *Id.*, No. 19. As scheduling was based on the CBA, scheduling Plaintiff at the MOB 5 clinic would have required bumping a more senior staff member from the schedule, contrary to the seniority rules under the CBA. *Id.*, No. 46.

In contrast, Plaintiff asserts that scheduling at MOB 5 was not based on seniority, and that Mengistab, as Lead Technician, was actually in charge of the schedule. Pl. SSUF No. 16. Plaintiff states that although he was originally trained at MOB 5, management removed him from the schedule shortly thereafter, even though his name continued to appear on the schedule. Pl. SSUF, Nos. 16-17. Plaintiff disputes that he was hired to work only at the hospital, or only the specific hours listed in his job posting. *Id.*. No. 19.

During his employment at the Santa Rosa campus, Plaintiff asserts that he performed in a competent and capable manner, and received compliments regarding his performance. SAC ¶ 14. However, Plaintiff made numerous complaints to his union representative, Marcie Call regarding his workload and schedule. JSUF, Nos. 20, 24.

Plaintiff claimed that the MOB 5 patients were easier to handle because it was an outpatient facility so there were no emergency or intensive care patients. *Id.*, Nos. 21, 45. Plaintiff also claimed that the hours at MOB 5 were better since the shift started earlier than the shift at the Santa Rosa Hospital. *Id.*, No. 22. Plaintiff repeatedly requested to be scheduled at MOB 5 and complained to his union steward that he was not scheduled there because his co-workers were discriminating against him and harassing him. *Id.*, No. 41. Plaintiff felt harassed based on unfriendly relationships with his co-workers and the disproportionate workload. Pl. SSUF, No. 37. Every time Plaintiff voiced a disparity in workload or treatment, he received a

non-disciplinary "QA write-up." *Id.* Plaintiff received approximately 12 of these write-ups. Ex. D to Morgan Decl. ("Call Decl.") ¶ 10.

Although Call conducted an investigation of Plaintiff's complaints and held a meeting with his managers, she did not file a grievance on Plaintiff's behalf because she concluded that there was no CBA violation, as Plaintiff was paid overtime for the extra hours he had worked. JSUF, Nos. 25-26. Plaintiff received counseling for excessive complaining about his workload and unprofessional behavior, although the parties dispute whether the counseling was disciplinary. Pl. SSUF, No. 27.

Plaintiff believes that his co-workers complained about his excessive complaining because he was African American. JSUF, Nos. 39, 42. Plaintiff felt he was being treated like an "angry black man" and that he perceived a difference in treatment, from Mengistab in particular. *Id*, Nos. 42-43. Plaintiff attributes this treatment to his belief that Mengistab felt that Plaintiff had "stepped on him or taken his place" after Mengistab returned from vacation. *Id.* No. 42.

At some point during his two-year tenure at Santa Rosa, Mengistab remarked to Plaintiff that he "felt African-Americans over here are lazy and do not take advantage of what the state offers to them, I guess, as people." *Id.*, No. 36. Plaintiff also believed he was written up more harshly for making the same minor mistakes made by other technicians, although he did not know if that was true. Pl. SSUF, No. 32; Def. SSUF, No. 35. Plaintiff also felt that unlike the technicians working at MOB 5, he was not given adequate bathroom or lunch breaks because his patients were scheduled too close together. Pl. SSUF Nos. 32, 34, 35. Plaintiff also believed he was treated differently because he was excluded from a week of mammography training, which was a service performed only at MOB 5. Def. SSUF, No. 23; Pl. SSUF, No. 23.

Defendant disputes that the scheduling Plaintiff complained of was intentional, and instead asserts that it was a business decision, based on staffing and resources, to send patients not attended by 3:00 p.m. at MOB 5 to the Santa Rosa hospital, because it was open until later in the evening. Def. SSUF, No. 15. Plaintiff, on the other hand, claims that technicians from MOB 5 would intentionally add patients to his workload so they could leave early. Pl. SSUF, No. 15.

During his time working at Kaiser Santa Rosa, Plaintiff applied for transfers to other

facilities, which are awarded based on seniority in conformity with the CBA. JSUF, Nos. 28, 29. In 2011, Plaintiff was awarded a position at Kaiser Oakland based on his seniority, where he is currently employed. *Id.*, No. 30. After Plaintiff's transfer to the Oakland facility, his job at Santa Rosa was awarded to an African American male MRI technician. JSUF, No. 44.

**B. Procedural Background**

After his transfer to Oakland, Plaintiff filed a complaint asserting three causes of action against Defendant: (1) Discrimination based upon Race and Age under California Government Code section 12940; (2) Discrimination Based upon Race and Age in Violation of 42 U.S.C. § 1981 and 42 U.S.C § 2000e-2; and (3) Harassment and Creation of a Hostile Work Environment under California Government Code section 12940(i) and 42 U.S.C. § 2000e. SAC ¶¶ 23-45.

On January 30, 2014, Defendant filed the instant Motion for Summary Judgment. Dkt. No. 44. Defendant contends that there are no issues of material fact in regard to the first cause of action for discrimination under the FEHA because (1) Plaintiff has failed to establish a prima facie case of discrimination; (2) Defendant had a legitimate nondiscriminatory reason for prohibiting Plaintiff from working at MOB 5 and for denying him a transfer to another position; and (3) Plaintiff cannot show that Defendant's stated reason was a pretext for discrimination. Mot. at 9-15. Defendant also argues that Plaintiff has not raised a genuine issue of material fact in regard to the second cause of action for discrimination under Title VII or the third cause of action for harassment and creation of a hostile work environment. *Id*. at 16-18. In the alternative, Defendant argues that summary adjudication is proper as to Plaintiff's age discrimination claim. *Id*. at 19.

Plaintiff filed an Opposition on February 13, 2014. Dkt. No. 46. Defendant filed its Reply on February 20, 2014. Dkt. No. 49. On March 4, 2014, the Court found this matter suitable for disposition without oral argument. Dkt. No. 53.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 994 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

### A.    Evidentiary Objections

Defendant submitted eleven objections to Plaintiff's Separate Statement of Undisputed Facts. Def. Evid. Obj., Dkt. No. 50. Plaintiff did not file a response.

In Objection Nos. 1-11, Defendant objects to the deposition testimony of Plaintiff and Union Steward Call based on hearsay and lack of foundation. "[T]o survive summary judgment, a

party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). The Court's focus at summary judgment is not on the form of the evidence submitted, but on whether its content would be admissible. *Chartis Specialty Ins. Co. v. Aqua Sciences Eng'rs, Inc.*, 2013 WL 4647288, at *3 (N.D. Cal. Aug. 29, 2013).

On this basis, the hearsay and lack of foundation Objection Nos. 1-7, as to Plaintiff's declaration, are OVERRULED. The Court finds that Plaintiff could testify at trial as to: (1) his understanding of whether scheduling was based on seniority (Obj. No. 1); (2) whether or not he was scheduled for, or allowed to work at MOB 5 (Obj. No. 2); (3) whether Mengistab made a racially charged statement to him (Obj. No. 3); (4) whether he observed his workload to be heavier, whether he was permitted to reschedule patients, or whether other techs were permitted to (or did) reschedule patients to him (Obj. No. 4); (5) whether he was aware that the other techs were fearful of him and/or that they wrote a letter to management to that effect (Obj. No. 5); (6) whether QAs were punitive, and whether management threatened to discipline him for a large amount of QAs (Obj. No. 6); and (7) whether he was advised to transfer to another location, and the reasons therefore (Obj. No. 7).

With respect to Call's deposition testimony, the Court is also satisfied that she could offer admissible evidence at trial as to the matters contained in her declaration. Call's duties and responsibilities as union steward were to "uphold the language of the … [CBA]," and to "protect the rights of all the members." *Id.* ¶ 3. Moreover, Call averred that she had personal knowledge of the matters set forth in her declaration. Call Decl. ¶1. Accordingly, it is likely that Call would be able to testify at trial as to her understanding of the provisions of the CBA and what rights she understood it to confer. Objection Nos. 8-11 based on lack of foundation and hearsay are thus OVERRULED.

Defendant also objects to several statements by Plaintiff on the grounds that they conflict with Plaintiff's deposition testimony. With respect to Objection No. 2, Plaintiff's statement that he was "later told that [he] would not be allowed to work at MOB 5…" does not conflict with

Plaintiff's deposition testimony. *See* Chiles Depo.at 134:1-5. In his deposition, in addition to stating that Vestnys forgot to put Plaintiff on the list to work at MOB 5, Plaintiff also testified that he was intentionally excluded from MOB 5, and that he was on the list to work there, but was told he could not go. *Id.* Accordingly, this objection is OVERRULED.

With respect to Objection No. 3, the Court has reviewed paragraph 13 of Plaintiff's declaration and the corresponding deposition excerpt, and finds that while the declaration could be more precisely worded to read that Frezghi (Mengistab) made a racially charged "statement," as opposed to "statements," there is no conflict. Plaintiff alleges only a single statement, and the corresponding evidence establishes that Mengistab did not make any other racially charged statements. Accordingly, this objection is OVERRULED.

Last, Defendant objects to paragraph 8 of the Call declaration, which states, "QAs are non-punitive and cannot be used to discipline an employee." Defendant contends that this paragraph conflicts with Call's deposition testimony, in which she states that in her experience, QAs were never punitive, but that she cannot speak for other stewards' experiences. Call Depo. at 58:6-24. The Court has reviewed both statements, and while the declaration could be more precisely worded to state that Call's statement is based only on her own experience, there is no conflict. Accordingly, this objection is OVERRULED.

**B. Age and Race Discrimination Under FEHA[3]**

In his first claim, Plaintiff asserts that Defendant intentionally discriminated against him on the basis of his age and race while he was employed at the Kaiser Santa Rosa facility, in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12900 et seq. SAC ¶¶ 23-28. FEHA prohibits discrimination in the workplace, making it unlawful "for an employer, because of race . . . [or] age, . . . to refuse to hire or employ the person

---

[3] Plaintiff alleges that he was subject to discrimination based on his age because he was not treated the same as the older MRI techs in his department. SAC ¶ 25. FEHA expressly prohibits discrimination against older workers, not younger workers. *See Stevenson v. Superior Court*, 16 Cal.4th 880, 895 (1997). Thus, even if Plaintiff was 40 years old at the time he experienced the alleged discriminatory actions, Plaintiff cannot establish a prima facie case of age discrimination because he is not in a protected class. Moreover, beyond his own speculation that age was a motivating factor, Plaintiff has not presented any evidence that his employer took any action because of his age.

. . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

Discrimination claims under FEHA follow the burden-shifting analysis applicable to federal employment discrimination claims articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). Under this framework, the plaintiff must first establish a prima facie case of discrimination; the burden then shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason" for the challenged action; and finally the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Snead v. Metro. Prop. & Cas. Ins. Co*., 237 F.3d 1080, 1093 (9th Cir. 2001).

When, as here, the employer moves for summary judgment, the burden is reversed. *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc*., 642 F.3d 728, 745 (9th Cir.2011) (quoting *Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 224 (1999)). In this situation, the defendant bears the initial burden to "show either that (1) plaintiff [can] not establish one of the elements of the FEHA claim or (2) there [is] a legitimate, nondiscriminatory reason" for its actions. *Lucent*, 642 F.3d at 745 (citation, alterations and internal quotation marks omitted).

To avert summary judgment, the employee must then " 'demonstrate either ... that the defendant's showing [is] in fact insufficient or ... that there [is] a triable issue of fact material to the defendant's showing.'" *Id*. at 746 (quoting *Hanson*, 74 Cal. App. 4th at 225). The employee may do this by establishing pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id*. (quoting *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir. 1998)). To meet this burden, the employee's circumstantial evidence "'must be specific' and 'substantial.'" *Id*. (quoting *Godwin*, 150 F.3d at 1221).

1. <u>Prima Facie Case</u>

Plaintiff identifies a number of adverse employment actions which he argues had a discriminatory basis: (1) being subjected to a racially charged comment about African Americans by the person in charge of Plaintiff's schedule; (2) exclusion from mammography training offered

to all other MRI techs; (3) inequitable workload distribution, resulting in loss of breaks and sufficient time to use restroom; and, (4) attempts to discipline Plaintiff, but not other employees, for non-punitive issues. Opp'n at 10-11. Defendant contends that Plaintiff failed to present any facts suggesting that any of these actions occurred under circumstances suggesting discriminatory motive. Mot. at 11-12.

To establish a prima facie case of disability discrimination, Plaintiff must prove: (1) that he is a member of a protected class; (2) that he was performing his job duties in a competent and satisfactory manner; (3) that he suffered an adverse employment action; and (4) that similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action giving rise to an inference of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Guz*, 24 Cal. 4th at 355-56.

The burden at this stage is not onerous, and the evidence necessary to satisfy it is minimal. *Guz*, 24 Cal. 4th at 354 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005). Essentially, a plaintiff must show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion...." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010) (quoting *Reid v. Google*, 50 Cal. 4th 512, 520 fn. 2 (2010)). "While the elements of a plaintiff's prima facie case can vary considerably, generally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable inference of discrimination." *Id.* (citing *Hersant v. Cal. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1002 (1997)).

Defendant argues that Plaintiff cannot establish a prima facie case because he has no evidence that any alleged adverse employment action was racially motivated. Mot. at 11-12. Defendant argues that the policies of which Plaintiff complains were applied uniformly to all MRI techs, and that scheduling was governed exclusively by the CBA. *Id.* Defendant further asserts that the only evidence of a racially discriminatory motive Plaintiff presented was Plaintiff's own deposition testimony that he believed race was the basis for these actions. *Id.*

In opposition, Plaintiff argues that he has sufficiently alleged evidence of racial discrimination. Opp'n at 12. Particularly, Plaintiff asserts that he was the only African American in the MRI Department, and he believes that he was singled out for discrimination on this basis. *Id.* at 5, 12. Plaintiff maintains that the fact that he was the only member of his race in the MRI department, coupled with the racial comment made by the person in charge of his schedule, suggests a discriminatory motive sufficient to establish a prima facie case. *Id.*

The Court finds that Plaintiff has met the elements of his prima facie case with respect to the racial discrimination claim.

First, Plaintiff has submitted evidence that could support the inference that Defendant applied the CBA rules differently to Plaintiff than it did to similarly-situated non-African American employees. Specifically, Union Steward Call testified that there was nothing in the CBA that would have prevented Plaintiff from working at MOB 5. Call Decl. ¶ 14. Plaintiff also testified that throughout his employment, he was placed on the schedule to work at MOB 5, but told he could not work there. Morgan Decl., Ex. B ("Chiles Depo.") at 134:1-21, Dkt. No. 47-2. By contrast, all other MRI techs in the department were regularly scheduled to work at MOB 5, and did in fact work there. Further, Plaintiff testified that Mengistab routinely scheduled patients to him from MOB 5, and that other MRI techs were allowed to reschedule their patients, but Plaintiff was told by management that he could not do so. Chiles Depo. at 75: 15-74. Plaintiff missed lunches and breaks as a result of the scheduling, and was often required to work overtime to complete his schedule. *Id.* at 74:12-15; 75:5-7; Call Decl. ¶ 12. Plaintiff also testified that the daily scheduling of patients prevented him from using the restroom, but that his complaints went unheeded. Chiles Depo. at 84:17-85:19.

Second, Plaintiff has submitted evidence that could support the inference that Defendant applied disciplinary rules differently to Plaintiff than it did to other employees. Plaintiff testified that whenever he complained about inequitable scheduling, or the heaviness of his workload in comparison to other technicians, he was given a "QA" write-up. Morgan Decl., Ex. C ("Chiles Decl.") ¶¶ 18-19, Dkt. No. 47-3. Plaintiff also testified that he received a number of QA write-ups for minor mistakes, such as not scanning a patient's paperwork. Ex. D to Def. Mot. ("Chiles

Depo.") at 81:5-20. Plaintiff was also asked to take care of other technician's minor mistakes with respect to faxing or scanning paperwork. *Id*. Although Plaintiff was not aware of whether other techs received similar write-ups for such minor mistakes, Plaintiff was subjected to disciplinary action for the QA write-ups based on the complaints he made to management about scheduling and workload. Call Decl. ¶¶ 8-10; Ex. A to Morgan Decl. ("Call Depo.") at 58:12-25. Plaintiff also presented evidence that such QA's were not typically used in a disciplinary manner, but that his supervisor, Vestnys, threatened to use them in a disciplinary manner in his case. Call Decl. ¶¶ 8-10; Ex. A to Morgan Decl. ("Call Depo.") at 58:12-25.

Last, Plaintiff has submitted evidence that could support the inference that there was a racial motivation behind the actions taken by his employer. Mengistab, as Lead Tech, was responsible for making the schedule for the MRI department. Call Decl. ¶¶ 13-14. Plaintiff testified that Mengistab told him that he believed African Americans were lazy with respect to obtaining government benefits. JSUF, No. 36. Mengistab, who is himself of African descent, also treated Plaintiff differently than the other MRI technicians.[4] *Id.*, No. 42. Further, Plaintiff was the only tech to be denied the opportunity to attend training in mammography, which was performed exclusively at MOB 5. Ex. A to Morgan Decl. ("Call Depo.") at 60:11-24. Plaintiff also presented evidence that he was given differing reasons for not being scheduled at MOB 5. When Plaintiff first complained about not being scheduled there, Defendant told Plaintiff's union representative that the reason was because Plaintiff lacked sufficient training. Call Depo. at 52:2-53:12. In conjunction with this lawsuit, Defendant now asserts that Plaintiff was not scheduled at MOB 5 solely because he lacked union seniority. Gray Decl. ¶¶ 4-8; 11; Reed Decl. ¶ 6.

Based on this evidence, the Court finds that Plaintiff has successfully established a prima facie case.

2. <u>Defendant's Legitimate, Non–Discriminatory Reason</u>

After Plaintiff establishes a prima facie case, the second stage of the analysis requires Defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action.

[4] Plaintiff attributes Mengistab's motive for treating him differently to Mengistab feeling Plaintiff had "stepped on him" or "taken his place." JSUF No. 42.

*Raytheon*, 540 U.S. at 49 n.3.  A reason is "legitimate" if it is "facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination."  *Guz*, 24 Cal. 4th at 358. Defendant's burden at this stage is one of production, not persuasion, and the Court may not make a credibility assessment.  *Njenga v. San Mateo Cnty. Superintendent of Schools*, 2010 WL 1261493, at *14 (N.D. Cal. March 30, 2010) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  Nor must Defendant persuade the Court that it was actually motivated by the proffered reasons.  *Burdine*, 450 U.S. at 254.

Here, the Court finds that Defendant has articulated legitimate, non-discriminatory reasons for the alleged adverse employment actions.

With respect to the bidding process for transfers to other positions, it is undisputed that this aspect of Plaintiff's employment was strictly governed by the terms and conditions of the CBA, which is based on seniority.  JSUF, Nos. 4-5, 29-30; Def. SSUF, No. 6.  This is so even though Plaintiff disagrees that "job transfers, bidding for new jobs, and scheduling" are governed by the CBA.  Pl. SSUF, No. 6.  However, Plaintiff's evidence on this fact points only to the testimony of Union Steward, Marcie Call, that *shift* scheduling is not governed by the CBA.  *See* Ex. D to Decl. of Angela Morgan in Supp't of Pl. SSUF ("Call Decl."), ¶ 13, Dkt. No. 47-4.  Moreover, Plaintiff does not appear to actually dispute that job transfers and bidding for new jobs were governed by the CBA (JSUF, No. 29) or that he was awarded his current position at Kaiser Oakland based on seniority rules set forth in the CBA (*Id.*, No. 30).

The Court also finds that Defendant has asserted a legitimate non-discriminatory reason for maintaining Plaintiff's shift schedule.  Defendant presented evidence that the CBA governed Plaintiff's shift schedule while working at the hospital.  Reed Decl. ¶¶ 3, 5; Gray Decl. ¶¶ 6, 11. Defendant presented evidence that Plaintiff was awarded a position at the Santa Rosa hospital with specific days and hours.  Def. SSUF, No. 7.  Moreover, it was undisputed that Plaintiff was the least senior tech in the MRI department.  JSUF, No. 12.  Defendant presented evidence that positions MOB 5 are awarded through the appropriate process under the CBA and staffed based upon seniority.  Def. SSUF, No. 16.  Plaintiff's own witness, Call, also testified that the CBA governs some aspects of shift scheduling, at least to the extent that those with greater seniority are

offered the chance to go home early when the hospital was short staffed or short on patients. Ex. E to Def. Mot. ("Call Depo.") at 37:3-19. For instance, Call testified that Plaintiff had once complained that his seniority was violated by management allowing MRI techs with less seniority to leave before him. *Id*. However, it is undisputed that the other techs all had greater seniority than Plaintiff did, and thus there was a legitimate reason for any such scheduling during Plaintiff's time at Santa Rosa. JSUF, No. 12.

Defendant also presented evidence that the rescheduling of patients from MOB 5 to the hospital was a business decision made to provide coverage for patients and manage the workplace. Def. SSUF, No. 15. Hospital policy was to reschedule patients whose scans were not completed by 3:00 p.n. each day were to the hospital trailer because the trailer was open until 7:00 p.m. each evening. *Id.* Moreover, if any of the techs scheduled to work at MOB 5 called in sick, the work would be rescheduled or accomplished at the hospital instead. *Id.*, No. 47.

With respect to the issue of denial of training, Defendant asserts that the only evidence Plaintiff presented was that his schedule was not compatible with the training dates, which is a legitimate, non-discriminatory reason. Reply at 8 (citing Ex. B to Morgan Decl. ("Call Depo.") 60:11-24).

Accordingly, Defendant has articulated a "legitimate, nondiscriminatory reason" for its scheduling and training decisions, which is "facially unrelated to prohibited bias" and if true, would "preclude a finding of discrimination." *Guz*, 24 Cal. 4th at 358.

3. Pretext for Unlawful Discrimination

Once the employer establishes a legitimate, non-discriminatory reason for its employment decision, the burden shifts to the plaintiff to produce "substantial responsive evidence," that the proffered reason was merely a pretext for discrimination. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). "[T]he employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

United States District Court
Northern District of California

factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the [asserted] non-discriminatory reasons." *Villanueva v. City of Colton*, 160 Cal. App. 4th 1188, 1195 (2008) (quoting *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 75 (2000)). However, speculation about an employer's motives is not substantial responsive evidence. *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1038 (2002).

Defendant argues that Plaintiff cannot establish that the stated reasons for the scheduling decisions were pretextual. Mot. at 15. Defendant asserts that it is entitled to a strong inference that there was no discriminatory motive because the same actors accused of discrimination are responsible for both hiring Plaintiff and the alleged adverse actions within a short time period. *Id*. Moreover, Defendant contends that Plaintiff cannot produce any evidence indicating that scheduling him exclusively at the Santa Rosa hospital MRI trailer was discriminatory. *Id.* Defendant also points to the fact that no grievance was filed since Plaintiff's union representative determined that there was no breach of the CBA.[5] *Id.*

In response, Plaintiff contends that he has raised a triable issue with regard to Defendant's credibility because Defendant gave conflicting justifications for the reason Plaintiff was not scheduled at MOB 5. Opp'n at 13. Particularly, Plaintiff contends that Defendant originally asserted that he did not have sufficient training to work at MOB 5, but now relies on seniority and the CBA as its non-discriminatory reason. *Id.*

"[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996). The same actor inference can be overcome, however, if the plaintiff provides "meaningful evidence that her supervisor harbored discriminatory animus." *Johnson v. Boys & Girls Clubs of S. Puget Sound*, 191 Fed. App'x 541, 545 (9th Cir. 2006). The inference may also be overcome by "evidence suggesting that [the employer] developed a bias against [the protected class]" during the interval between the favorable and unfavorable employment actions.

[5] The Court notes that this argument is somewhat disingenuous, as the reason a grievance was not filed was because Plaintiff was paid overtime for the extra hours he worked.

*Coghlan*, 413 F.3d at 1097. A two-year period is considered "short" under this doctrine. *See Bradley*, 104 F.3d at 271 (citing *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173 (8th Cir.1992)).

The Court agrees that Defendant is entitled to a strong inference of no discriminatory motive because Defendant hired Plaintiff and the adverse employment actions occurred within a relatively short two-year period. Plaintiff testified that he believed Mengistab, Vestnys, and Reed all made the decision to hire him, but then began to discriminate against him based upon his race after a short period of time. Ex. D to Def. Mot. ("Chiles Depo.") at 138:4-13. As evidence of his employer's discriminatory motive, Plaintiff argues that Defendant gave shifting reasons for not allowing him to work at MOB 5. *Id.*

"A triable issue as to the employer's veracity "may arise where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions." *Reeves v. MV Transp., Inc*. 186 Cal. App. 4th 666, 677 (2010) (citing *Guz*, 24 Cal. 4th at 363). Where "fundamentally different justifications" are offered, changing explanations could be considered "pretextual, developed over time to counter the evidence suggesting . . . discrimination". *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994).

As evidence of shifting explanations, Plaintiff points to the cited portion of Call's deposition, in which she states that during her initial investigation of Plaintiff's complaints, Defendant said that Plaintiff "didn't have enough experience to be [at MOB 5]". Call Depo. at 52:13-15. The Court disagrees that this is sufficient evidence to establish a shifting rationale sufficient to overcome Defendant's non-discriminatory reasons for not scheduling Plaintiff at MOB 5. Plaintiff presented evidence that Call testified that in response to her investigation of Plaintiff's "training claim," she was told Plaintiff did not have enough experience to be at MOB 5. Ex. A to Morgan Decl. ("Call Depo.") at 60:11-24. However, although Call testified she believed there was no specialized training required to work at MOB 5, Plaintiff testified that he did not receive mammography training, which performed exclusively at MOB 5. Chiles Decl. ¶ 7. Thus, a trier of fact could infer that at one point Plaintiff might not have had sufficient training to work at MOB 5.

Plaintiff argues that the fact that Defendant now presents evidence that scheduling was

United States District Court
Northern District of California

governed by the CBA is evidence that Defendant is attempting to cover-up the racially discriminatory motivation for its actions. Opp'n at 13. This alleged conflicting evidence consists of declarations from Plaintiff's direct supervisor and the Associate Human Resources Lead for the Santa Rosa hospital that the reason Plaintiff was not scheduled at MOB 5 was that he did not have sufficient seniority under the CBA to work at MOB 5. *See* Reed Decl. ¶¶ 3, 5; Gray Decl. ¶¶ 6, 11. While the two reasons given by Defendant differ, the Court finds that there is substantial evidence that there was no pretext because the first explanation was given in response to a specific investigation of Plaintiff's "training claim." *See* Cal Depo. at 52:13-15 (identifying a "training complaint" as the source of the reason given for Plaintiff's ineligibility to work at MOB 5).

4. <u>Summary</u>

Based on the analysis above, the Court finds that Plaintiff has failed to produce sufficient evidence to overcome Defendant's showing that the proffered reason for its actions are false or that the true reason is discriminatory based on Plaintiff's race. Thus, Plaintiff has not raised a triable issue with regard to discrimination sufficient to survive summary judgment. Accordingly, Defendant's motion for summary judgment is GRANTED as to the racial discrimination claim.

**C. Claim No. Two: Title VII**

1. <u>Race Discrimination</u>

Plaintiff's Title VII claims fail for the same reasons his FEHA claims fail since the alleged facts and the legal framework are the same for both sets of claims. *See Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *see also Chimara v. Contra Costa Cnty. Gov't*, 2013 WL 1899801, at *2–6 (N.D. Cal. May 7, 2013). Thus, as the Court has determined Plaintiff cannot support a claim of discrimination under FEHA, the Court GRANTS summary judgment as to Plaintiff's Title VII claim for the same reasons.

2. <u>Age Discrimination Under 29 U.S.C. § 623(a)(1)</u>

Plaintiff additionally argues that he has made a prima facie showing of age discrimination under 29 USC § 623(a)(1), the Age Discrimination in Employment Act ("ADEA") because, at 40 years of age, he was the youngest MRI tech in the department. Opp'n at 16. The Court disagrees.

The ADEA prohibits an employer from discharging or otherwise discriminating against

any individual over 40 years old because of age. 29 U.S.C. § 623(a). But the ADEA does not protect workers over age 40 from favoritism toward older workers. *See Gen. Dynamics Land Systems, Inc. v. Cline*, 540 US 581, 591 (2004) ("The prefatory provisions and their legislative history make a case that we think is beyond reasonable doubt, that the ADEA was concerned to protect a relatively old worker from discrimination that works to the advantage of the relatively young."); *Hamilton v. Caterpillar Inc.*, 966 F.2d 1226, 1228 (7th Cir. 1992) ("There is no evidence in the legislative history that Congress had any concern for the plight of workers arbitrarily denied opportunities and benefits because they are *too young*.") (emphasis in original)); *see also* 29 C.F.R. § 1625.2 (favoring older over younger individuals does not violate the ADEA even if younger individuals are over age 40). Accordingly, the Court GRANTS summary judgment as to the age discrimination claim.

**C. Claim Three: Harassment and Creation of a Hostile Work Environment**

In the third cause of action, Plaintiff alleges age and race-based harassment and failure to prevent harassment under both Title VII (42 U.S.C.§ 2000e-2 ) and FEHA (Cal. Gov't Code section 12940(i)). SAC, ¶¶ 39-45. Defendant, however, contends that Plaintiff cannot establish a prima facie case for harassment, and has accordingly moved for summary judgment. Mot. at 11-12.

FEHA "explicitly prohibits an employer from harassing an employee on the basis of race ... age… or ethnicity." *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 35, (2003) (internal citations omitted). Similarly, under Title VII it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" or to "deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race." 42 U.S.C. 2000e-2(a).

To prevail on a hostile workplace/harassment claim, an employee must show that: (1) he or she was subjected to verbal or physical conduct related to a protected trait; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment. *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998); *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 926 (N.D. Cal.

United States District Court
Northern District of California

2012).

Unlike discrimination claims, harassment allegations must be based on conduct that is avoidable and "outside the scope of necessary job performance," and do not include "personnel management actions such as . . . job or project assignments, office or work station assignments. . . deciding who will and who will not attend meetings. . . and the like. . ." *Reno*, 18 Cal. 4th at 647-48. Instead, "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp*., 47 Cal. 4th 686, 706 (2009). Harassment includes "epithets, derogatory comments or slurs." *Dee*, 106 Cal. App. 4th at 35.

Here, Plaintiff alleges that he was subjected to harassment and a hostile work environment based on his age and race. The Court will consider each in turn.

1. Harassment Based on Plaintiff's Age

Plaintiff alleges that he was subjected to age-based harassment sufficient to create a hostile work environment, because he was treated differently than "the older same level non-Black" MRI techs. SAC ¶ 25. However, Plaintiff has not come forward with any evidence of such harassment beyond asserting that he was the youngest MRI tech on staff. All of the MRI techs, including Plaintiff, were in their early to mid-forties at the time Plaintiff alleged age discrimination. Ex. D to Def. Mot. ("Chiles Depo.") at 138:16-21. Plaintiff's conclusory assertion that he was subject to harassment because he was the youngest is insufficient to survive summary judgment. *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). The Court thus finds that Plaintiff has failed to presented evidence sufficient to create a triable issue of fact as to whether he suffered age-based harassment. Accordingly, the Court GRANTS summary judgment as to this claim.

2. Harassment Based on Plaintiff's Race

Plaintiff also alleges that he was subjected to race-based harassment sufficient to create a hostile work environment. SAC ¶ 40. He further alleges that Defendant failed to take all reasonable steps to prevent discrimination and harassment from occurring in the workplace. *Id.*

United States District Court
Northern District of California

In order to create a hostile work environment, the harassment asserted must be "severe." *Gardner*, 838 F. Supp. 2d at 922. The harassment cannot be occasional, isolated, or sporadic, and Plaintiff must show a "pattern or routine." *Aguilar v. Avis Rent-A-Car System, Inc.*, 21 Cal. 4th 121, 129-31 (1999). In evaluating whether the work environment had become hostile because of the alleged harassment, the environment must be subjectively and objectively considered hostile from the perspective of a reasonable person. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995). Moreover, the hostility must be measured based on the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Fuller*, 47 F.3d at 1527. Additionally, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment ... is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

Defendant argues primarily that summary judgment is appropriate because Plaintiff cannot establish that he was subject to offensive comments or abusive conduct based on race, and that any such comments or conduct were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. *Id.* Defendant argues that a lone racial comment by Menigistab cannot give rise to an inference of discriminatory intent, as it was ambiguous and unconnected to any employment action. Mot. at 18.

Plaintiff counters that he has established direct evidence of severe or pervasive harassment based on Mengistab's racial remark, and has sufficiently connected it to the scheduling decisions. Opp'n at 14-15. Plaintiff does not allege any other racial comments, but contends that he felt harassed by his co-workers social interactions with him.[6] Def. SSUF, No. 37.

---

[6] At his deposition, Plaintiff gave the following as examples of what he considered to be race-based harassment: once when a co-worker asked for him assistance in preparing an injection he felt tension during the interaction; a co-worker asked him to turn down the volume of his music because she found it distracting, but listened to her own music at times; co-workers shared personal stories with each other but not with him; a male co-worker occasionally shared inappropriate personal stories with him; co-workers did not invite him to socialize with them after work. Def. SSUF No. 37, citing Chiles Depo. at 112:2-22; 121:11-19; 122:22-25; 123:1-8, 18-25; 124:1-10, 16-25; 125:1-8. It is also undisputed that Plaintiff's co-workers told management they

The Court finds that Plaintiff has not presented sufficient evidence to support an inference that he was subject to "severe or pervasive" harassment. To establish a hostile work environment, Plaintiff must submit evidence of a "concerted pattern of harassment of a repeated, routine and generalized nature." *Aguilar v. Avis Rent A Car System*, 21 Cal. 4th 121, 131 (1999). Here, Plaintiff points to a single, somewhat ambiguous comment made in a two-year period that Mengistab observed African Americans to be lazy with respect to securing government benefits. JSUF, No. 36. This comment was not made in front of other co-workers or management, and no grievance was ever filed. Plaintiff does not present any evidence establishing a connection between this comment and any of the issues he experienced with regard to his workload or schedule.

Plaintiff nevertheless argues that a singular offensive act can be enough to establish employer liability for a hostile work environment. Opp'n at 15. Plaintiff cites *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 36 (2003), arguing that here, "the single racial slur [by Mengistab] exacerbated the severity of the remark and created a hostile work environment for Plaintiff." Opp'n at 15. However, *Dee* is distinguishable as in that case, the supervisor's racial slur was made after the employee complained that he told her to lie. *Id.* at 33. The court found that it was a reasonable inference "that [the supervisor] wished to intimidate [plaintiff] so that she would not complain to higher management about his conduct." *Id*. at 36. The court further found that "a reasonable trier of fact could infer that the racial slur was not an isolated event because it explained [the supervisor's] motivation for creating an abusive working environment for [plaintiff]." *Id*. The supervisor also called Dee a "bitch" and "constantly" used the word "asshole." *Id.* He also berated her, "harassed" her, ordered her to lie, and blamed her for tasks he ordered her to perform. *Id.*

In contrast, Plaintiff has not provided any information about the timing or circumstances in which the comment was made. There is no indication that, like the employer in *Dee*, Mengistab

---

were scared and uncomfortable around Plaintiff, felt that he was dangerous, and complained about Plaintiff's "excessive complaining" about his workload. JSUF Nos. 39, 43. Because of this, Plaintiff felt that he was treated like the "angry black man" by his co-workers, although no one ever called him that. JSUF No. 43.

intended to intimidate Plaintiff. There is also no indication that the alleged harassment in the form of inequitable scheduling followed the comment. Instead, Plaintiff has not connected the comment to any behavior by Mengistab or Plaintiff's managers, who he also contends were responsible for his inequitable schedule. Accordingly, a reasonable trier of fact cannot infer that the isolated comment had anything to do with Plaintiff's daily schedule or apportionment of the workload. The racial comment appears to have been an isolated occurrence. For this reason, the Court GRANTS summary judgment as to Plaintiff's harassment and failure to prevent harassment claims.

**CONCLUSION**

Based on the analysis above, the Court hereby GRANTS Defendant's Motion for Summary Judgment. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: September 30, 2014

MARIA-ELENA JAMES
United States Magistrate Judge